**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF
TEXAS SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE § | | |
| § | | |
| 40/40 ENTERPRISES, INC., § | | CASE NO. 17-42244 |
| § | | CHAPTER 11 |
| § | | |
| DEBTOR. § | | |
| § | | |
| SHIELDS LIMITED PARTNERSHIP § | | |
|    Plaintiff, § | | |
| § | | Adversary Case No. 18-04033 |
| v. § | | |
| § | | |
| BOO NATHANIEL BRADBERRY § | | |
| AND 40/40 ENTERPRISES, INC. § | | |
|    Defendants. § | | |

**MEMORANDUM OPINION REGARDING
<u>PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT</u>**

The only issue remaining to be decided in this adversary proceeding is the request by the plaintiff, Shields Limited Partnership, for an award of its attorneys' fees and expenses incurred in connection with pre-petition litigation. The plaintiff seeks a final summary judgment in its favor and against the defendants, jointly and severally. The defendants have not responded to the plaintiff's motion.

**JURISDICTION**

The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This proceeding involves the plaintiff's affirmative claims against both the debtor, 40/40 Enterprises, Inc., and a third party that are necessarily resolved pursuant this Court's claims resolution process. Accordingly, this Court possess constitutional authority to enter final orders in this proceeding. *See Stern v. Marshall,* 131 S.Ct. 2594 (2011).

## SUMMARY JUDGMENT STANDARDS

Shields Limited Partnership ("Shields") brings its motion for final summary judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (discussing the summary judgment standards).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion at trial is on the moving party, "that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322. Factual controversies are resolved in favor of the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). The defendants in this case have not submitted any

argument or evidence in opposition to Shields' motion. Nevertheless, Shields has the burden of establishing the absence of a genuine issue of material fact and, unless it has done so, the Court may not grant the motion, regardless of whether any response was filed. *See Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir. 1985).

## UNDISPUTED FACTS

Most of the underlying facts have already been decided by the Texas Supreme Court. *Shields Limited P'ship v. Bradberry*, 526 S.W.3d 471 (Tex. 2017) (hereinafter "Bradberry II"). "Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions." *Pritchard v. U.S. Tr. (In re England)*, 153 F.3d 232, 235 (5th Cir. 1998) (internal citations and quotation marks omitted). "The doctrine encompasses those decisions decided by necessary implication as well as those decided explicitly." *Id.* Moreover, under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to review, modify, or nullify state court orders. *See Union Planters Bank Nat's Ass'n v. Salib*, 369 F.3d 457, 462 (5th Cir. 2004). *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The dispute between the parties involved a commercial lease. Shields was the landlord, Boo Nathaniel Bradberry was a subtenant, and 40/40 Enterprises, Inc. (the "Debtor") was a sub-subtenant pursuant to written lease agreements. Bradberry II, 526 S.W.3d at 475. After the lease expired, the Debtor remained in the premises on a month-to-month basis for a period of time. *See id.* at 477. Thereafter, Shields sent a notice of termination of the lease on October 30, 2013, terminating the Debtor's right of possession effective December 1, 2013. *See id.*

When the Debtor did not vacate the premises, Shields filed an eviction lawsuit in the justice court. *See id.* The justice court found in favor the Debtor. *See id.* Shields appealed for

3

a *de novo* trial in the county court at law, which also found in favor of the Debtor. Shields then appealed to the Dallas Court of Appeals, which affirmed. *See id.* at 477-78. Shields then filed a petition for review with the Texas Supreme Court, which was granted. *See generally Bradberry II*, 526 S.W.3d 471.

On May 12, 2017, the Texas Supreme Court issued a unanimous opinion and judgment reversing the lower courts and rendering judgment that Shields had a right to immediate possession of the premises. *See id.* at 474-75. The Court further found there was no dispute that Shields owns that property and that Shields gave proper notice terminating the Debtor's right of possession and the Debtor must vacate the premises. *See id.*

The Debtor filed a motion for rehearing, which was denied. Thereafter, the Texas Supreme Court issued its Judgment on May 12, 2017 and its Mandate on September 25, 2017.

Both the Texas Supreme Court's Judgment and Mandate ordered that the case was remanded to the trial court to award attorney's fees in accordance with the parties' contract and that Bradberry and the Debtor shall pay, and Shields shall recover, the costs incurred in this Court and in the court of appeals. *See Bradberry II*, 526 S.W.3d at 487.

The underlying contract was a 1997 Commercial Lease Agreement ("1997 Lease"), naming Bernard Shields as landlord and Mohsen Heidari as tenant. *Shields Ltd. P'ship v. Bradberry*, 518 S.W.3d 49, 51 (Tex. App.—Dallas, June 23, 2015, pet. granted) (hereinafter "Bradberry I").

In 2005, Shields, Heidari, and Bradberry, individually, entered into a Sublease Agreement that, among other things, named Shields as landlord and Bradberry as sub-tenant. *Bradberry I*, 518 S.W.3d at 51-52. Per the Sublease Agreement, Bradberry agreed to be bound by the terms of the 1997 Lease. *See id.* In addition, in 2005, Shields, Heidari, and Bradberry,

4

entered into a Sub-Sublease Agreement that, among other things, named Shields as landlord and the Debtor as "sub sub-tenant." *See id.* Per the Sub-Sublease Agreement, the Debtor likewise agreed to be bound by the terms of the 1997 Lease. *See id.*

Section 16.08 of the 1997 Lease provides, in pertinent part, as follows:

> If on account of any . . . default by any party hereto . . . it shall become necessary for the nondefaulting party to employ an attorney to enforce . . . any of its rights or remedies hereunder, the defaulting party agrees to pay the nondefaulting party its reasonable attorney's fees.

One of the events of default, as defined in the 1997 Lease, included the "[f]ailure of Tenant to comply with any term, condition or covenant of this Lease." The 1997 Lease provides, among other things, that the "[t]enant shall vacate the Demised Premises upon the expiration of the Lease Term,"

Thus, once Shields terminated the Debtor's and Bradberry's right of possession, but they failed to vacate the premises, they were in default of the 1997 Lease. It was at that point that Shields pursued an eviction to obtain a court-ordered writ of possession to forcibly remove them from the leased space. *See Bradberry II*, 526 S.W.3d at 487. Shields was unsuccessful in all of the lower state courts on obtaining such a writ until the Texas Supreme Court reversed, holding that Shields "ha[d] a superior right to immediate possession of the leased premises." *See Bradberry II*, 526 S.W.3d at 487.

After the case was remanded by the Texas Supreme Court to the County Court at Law No. 5, Shields requested and obtained a writ of possession issued by the clerk of the court to any sheriff or constable of Dallas County, Texas. Before the writ could be fully served and executed, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy ultimately led to an agreement whereby the Debtor and Bradberry voluntarily vacated the leased premises, and the Debtor's case was converted to a liquidation proceeding

5

under Chapter 7 of the Bankruptcy Code.

As a result of the underlying bankruptcy case, Shields removed the County Court at Law No. 5 case to this Court. Now, Shields seeks to recover its attorney's fees, pursuant to the Judgment and Mandate of the Texas Supreme Court and Section 16.08 of the 1997 Lease. Specifically, Shields seeks to recover from the Debtor and Bradberry, jointly and severally, all of the attorney's fees and other legal fees and expenses incurred by Shields in connection with the enforcement of its rights and remedies under the 1997 Lease, the Sublease Agreement, and Sub-Sublease Agreement.

In support of its motion for final summary judgment, Shields submitted the affidavit of Dylan B. Russell. The uncontroverted affidavit and the exhibits attached thereto establish that Shields incurred reasonable and necessary attorney's fees and other legal fees and expenses in connection with the underlying cases and disputes among Shields, the Debtor, and Bradberry in the amount of $218,393.71, which consists of $201,681.75 in attorney's fees, paralegal fees, and law clerk fees and $16,711.96 in expenses.

Additionally, in the event the Debtor or Bradberry appeal to the district court, the uncontroverted affidavit and the exhibits attached thereto establish that Shields would incur an additional $8,760.00 in reasonable and necessary attorney's fees in responding to such an appeal. If the Debtor or Bradberry were to appeal thereafter to the Fifth Circuit, Shields would incur an additional $18,250.00 in reasonable and necessary attorney's fees in responding to such an appeal and additional $14,600.00 in reasonable and necessary attorney's fees in the event the Fifth Circuit requests oral arguments and oral argument is presented in New Orleans.

## CONCLUSION

For all the foregoing reasons, the Court concludes that there is no genuine dispute as to any material fact, and that the plaintiff, Shields Limited Partnership, is entitled to judgment as a matter of law. Thus, Shields' motion is **GRANTED.** The Court will enter a separate judgment consistent with this memorandum opinion.

Signed on 1/22/2019

_Brenda T. Rhoades_    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE